UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ALICIA TAYLOR,  )<br>  )<br>  Plaintiff,  )<br>  )<br>v.  )<br>  )<br>NORTH AMERICAN  )<br>INDUSTRIAL SERVICES, INC.,  )<br>  )<br>  Defendant.  ) | Civil Action Number<br>**5:20-cv-01164-AKK** |

## MEMORANDUM OPINION AND ORDER

Alicia Taylor brings this action against North American Industrial Services for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. Doc. 1. Taylor seeks to recover unpaid overtime compensation allegedly owed to her and other damages under the FLSA's overtime provision, 29 U.S.C. § 207(a). *Id*. North American now moves for summary judgment, doc. 23, arguing that it properly classified Taylor as an exempt administrative employee, docs. 24, 34. Because a genuine material dispute exists regarding whether Taylor's primary duty included the exercise of discretion and independent judgment, North American's motion is due to be denied.[1]

---

[1] Also pending is Taylor's motion to strike an affidavit by William Shaw that North American relied upon in its summary judgment motion. Doc. 30. Taylor argues (1) that North American failed to disclose Shaw as a witness, as required by Rule 26, and (2) that Shaw's affidavit is not

1

## I.

North American is "a leading provider of environmental and industrial cleaning support services for a variety of energy, industrial, and chemical sector businesses across the country." Doc. 24 at 2. Taylor worked as a regional safety manager for North American from 2012 to 2020, *id.* at 3, 12, and as a regional safety manager, Taylor's responsibilities included responding to outages at North American's facilities, completing investigations of safety incidents, conducting safety audits and inspections, and training employees on safety issues, *id.* at 5-10; doc. 28 at 2-5. In April 2020, Taylor was informed that North American would be closing its branch operations in Decatur, Alabama, and that the closure resulted in the elimination of her position. Docs. 24 at 12; 28 at 2, 6. Taylor then filed this lawsuit, alleging that North American failed to pay her overtime compensation as required by the FLSA and seeking overtime pay and other damages. Doc. 1. After a period of discovery, North American moved for summary judgment. Doc. 24. Taylor filed her response, doc. 27, North American filed its reply, doc. 34, and the motion is now ripe for resolution.

---

based on personal knowledge. *See id.* Shaw was one of Taylor's supervisors and was referenced multiple times during Taylor's deposition. Doc. 25-1 at 43-45. And Taylor was shown the attachments to Shaw's affidavit during her deposition. *Id.* at 16-17, 20-21, 67-76. Therefore, Taylor's contention that she was unaware of Shaw's existence or that he might have relevant knowledge is unavailing. Her personal knowledge argument similarly misses the mark, as Shaw's affidavit seems squarely grounded in his experience as an executive at North American. Taylor's motion, doc. 30, is therefore due to be denied.

**II.**

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine dispute of material fact exists if a "reasonable jury could return a verdict for the nonmoving party" under the governing law. *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1362 (11th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Because the court must construe the evidence in the light most favorable to the nonmoving party, summary judgment is only appropriate "if a case is so one-sided that [the movant] must prevail as a matter of law." *Id.* (citing *Anderson*, 477 U.S. at 251-52).

**III.**

Under the FLSA, employees are entitled to overtime pay of at least one and a half times their hourly rate for hours worked in excess of forty per week. 29 U.S.C. § 207(a).[2] The FLSA's overtime provision, however, does not apply to workers "employed in a bona fide administrative capacity." 20 C.F.R. § 541.200 (citing 29 U.S.C. § 213(a)). This administrative exemption applies to employees (1) who earn more than $684 per week, (2) "whose primary duty is the performance of office or non-manual work directly related to the management or general business operations

---

[2] The parties do not dispute that Taylor occasionally worked more than forty hours per week and was not paid overtime. Docs. 28 at 7; 34 at 1.

3

of the employer, and (3) "whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." *Id*. Only the second and third prong are at issue in this dispute.[3] And, relevant here, the employer bears the burden of proving that an employee qualifies as exempt under the regulations, *Atlanta Prof'l Firefighters Union, Local 134 v. City of Atlanta*, 920 F.2d 800, 804 (11th Cir.1991), and "FLSA provisions are to be interpreted liberally in the employee's favor and its exemptions construed narrowly against the employer," *Rock v. Ray Anthony Int'l, LLC*, 380 F. App'x 875, 877 (11th Cir. 2010) (citing *Birdwell v. City of Gadsden*, 970 F.2d 802, 805 (11th Cir.1992).

## A.

Whether an employee's primary duty is related to the management or general business operations of the employer depends on whether the employee "perform[s] work directly relating to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). This specifically includes "work in functional areas such as . . . quality control; . . . safety and health; . . . [and] legal and regulatory compliance." *Id*. at § 541.201(b).

In her deposition, Taylor testified that she: (1) was responsible for overseeing and managing safety-related matters for North American facilities in five different

---

[3] The parties agree that Taylor earned more than $684 per week. *See* docs. 24 at 11-12; 28 at 2.

states, doc. 25-1 at 14, 17-19; (2) developed and conducted regulation-compliant safety trainings for employees to ensure compliance with Occupational Safety and Health Administration guidelines, *id*. at 18-19; (3) directed other supervisors and managers on how to respond to safety issues, *id*. at 19; (4) ensured compliance with Department of Transportation regulations, including North American's drug testing program, *id*. at 20; and (5) ensured that "customer and site specific safety requirements were known and managed," that "incident investigations and analyses were completed," and that "corrective actions were implemented for reported near misses, incidents, and vehicle accidents," *id*. And on her resume, Taylor lists the following responsibilities at North American: "mentored and guided employ[ees], ensuring all were trained in required safety policies and procedures . . . , inspected job sites and facilities to detect potential safety and health hazards and put corrective [measures] immediately into effect, investigate[d] and managed accidents/incidents, prepare[d] and conduct[ed] weekly/monthly safety meetings, [a]nd coordinate[d] compliance with C.D.L. drivers." *Id*. at 60; *see id*. at 7 (confirming that resume accurately reflected Taylor's duties).

Taylor argues that despite these responsibilities, she does not meet the second prong of the test because she "spent approximately eighty to ninety percent of her time working in the field on outages," doc. 28 at 14-16, and was therefore not primarily engaged in office or non-manual work as required by the statute. To

support her position, Taylor cites *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008), where the Eleventh Circuit found that a class of store managers did not qualify as exempt employees because their primary duties were non-managerial. The analysis in *Morgan*, however, centered on the executive exemption, not the administrative exemption at issue here, and is thus distinguishable. *See id*. at 1265-69. Moreover, the Circuit based its decision on the fact that "overwhelming evidence . . . showed plaintiff store managers spent 80 to 90% of their time performing nonexempt, manual labor, such as stocking shelves, running the cash registers, unloading trucks, and cleaning the parking lots, floors, and bathrooms." *Id*. at 1269. Here, even though most of Taylor's work was responding to outages "in the field," she does not claim to have done any manual, non-office work that parallels the shelf-stocking and truck-unloading that the managers performed in *Morgan*. And Taylor was unquestionably still primarily engaged in the precise type of exempt activities that the relevant statute contemplates – quality control, safety and health, and legal and regulatory compliance. 29 C.F.R. § 541.201(b).

Taylor also contends that "[u]ltimately, it [was] the [other] supervisor or manager's responsibility to ensure that their site [was] operating in compliance with the requisite safety guidelines," and that her primary duty with North American was merely "assisting with various outages." Doc. 28 at 14-16. But even accepting these

claims as true, Taylor's primary duties involved the type of work explicitly listed in the relevant statutory text. *See* 29 C.F.R. § 541.201(b).[4] Given Taylor's deposition testimony and the content of her resume, and even construing the requirements of the exemption narrowly against North American, *see Birdwell*, 970 F.2d at 805, there is no genuine dispute of material fact as to whether Taylor meets the second requirement of the administrative exemption.

## B.

The administrative exemption's third prong asks whether the employee's primary duty included "the exercise of discretion and independent judgment with respect to matters of significance," i.e. "the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). This determination must be made "in light of all the facts involved in the particular employment situation," and regulations list several factors to consider at this step, including:

> "whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer

---

[4] *See also Harrison v. U.S. Pipe & Foundry*, 2016 WL 4581091, at *9 (N.D. Ala. Apr. 19, 2016), *report and recommendation adopted sub nom. Harrison v. Pipe*, 2016 WL 4577032 (N.D. Ala. Sept. 1, 2016) (citing *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349 (5th Cir. 2015)) (holding that plaintiff met the second requirement where his "primary job duties included many of those listed in the regulations' illustrative list").

7

>  in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances."

*Id*. at § 541.202(b). Though the "exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision, . . . employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." *Id*. at § 541.202(c). Thus, the administrative exemption is not limited to employees who have ultimate authority and "a complete absence of review." *Id*. But the exercise of discretion and independent judgment "must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." *Id*. at § 541.202(e). If an employee's discretion is limited to applying these techniques or standards "within closely prescribed limits to determine the correct response to an inquiry or set of circumstances," she does not meet the third requirement of the administrative exemption and is therefore entitled to overtime. *Id*. at § 541.704.

North American urges the court to find that, as a matter of law, Taylor exercised the discretion and independent judgment necessary to meet this

8

requirement.  In support, North American cites deposition testimony from both Mike Pickering, Taylor's direct supervisor, and from Taylor herself tending to show that Taylor: (1) "used her own judgment to ensure that employees were following all safety precautions" and "based upon the circumstances and the corresponding risk, [] would also make recommendations on what needed to be done to rectify the safety issue; (2) "was ultimately responsible for identifying the root cause and corrective action for any investigation" based on her independent judgment; (3) made "evaluative decisions on how and when to conduct audits and inspections and determin[ed] whether the circumstances covered by the audit were legally compliant;" and (4) exercised discretion in "prepar[ing] presentation materials and adjust[ing] her [training] presentations to ensure compliance with applicable regulations and [North American's] own policies wherever they differed."  Doc. 24 at 27-33.

Taylor refutes this characterization of her work.  Specifically, Taylor testified: (1) that although she was responsible for ensuring that employees were working safely during an outage, her independent judgment was limited to recommending corrective measures based on North American's existing policies or standard operating procedure, doc. 25-1 at 14-15, 23-24; (2) that her direct supervisor was on-site at most of these outages, and that her discretion was restricted to entering information about the outage into a standardized form, *id*; (3) that during an accident

9

investigation, she was again often joined on site by her direct supervisor to oversee her investigation, and that her role consisted of mainly filling out forms and checklists and seeking guidance from her supervisor on next steps to address the incident, *id.* at 26-27; (4) that she performed audits based primarily on OSHA regulations and company policies, *id.* at 30-31; and (5) that her only input on training materials was to correct any discrepancies between North American's training presentations and OSHA requirements, *id.* at 18-19.  Based on this description of her responsibilities, Taylor argues in her brief that the bulk of her duties "required that she apply well-established procedures set forth by [North American's] policies and procedures, as well as the manuals and regulations issued by [] various government entities," and that she thus "did not have substantial discretion with respect to matters of significance."  Doc. 28 at 16-19.

Needless to say, Taylor's description of her duties is diametrically different than North American's version.  North American is of course correct in noting that excerpts of Mike Pickering's deposition[5] and William Shaw's declaration[6] conflict

---

[5] North American specifically notes Pickering's testimony that Taylor was a "subject-matter expert on the issue of workplace safety" and "was ultimately responsible for identifying the root cause and corrective action for any investigation."  Doc. 24 at 4, 11-12.

[6] Shaw wrote in his declaration that he "expected Ms. Taylor to perform her job duties independently with little day-to-day oversight by [Shaw] or anyone at [North American]. As a Regional Safety Manager, Ms. Taylor was expected to draw upon her years of experience and training to evaluate the safety of a variety of situations and investigate any accidents or near accidents."  Doc. 25-3 at 3.

with Taylor's recounting of her responsibilities. Based on this conflicting evidence, North American may well be right that Taylor's description of her duties is inaccurate. To side with North American, however, the court would have to weigh the evidence and make credibility determinations – both of which are provinces of the jury. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013). And at the summary judgment stage, the court must credit the nonmoving party's version of events when conflicts arise. *See id*. Here, as a colleague on this court found when denying summary judgment against a quality assurance supervisor's FLSA claim, "factual disputes remain as to [Taylor's] freedom from supervision, as to [her] ability to exercise discretion and independent judgment as opposed to merely applying policies and standards, and as to the significance of [Taylor's] decision-making duties." *Harrison*, 2016 WL 4581091, at *10.[7]

Put simply, a reasonable jury, if it were so inclined after hearing the evidence, could find that North American cabined Taylor's discretion to following predetermined guidelines and procedures and that she thus did not exercise the requisite discretion or independent judgment contemplated by the third prong of the administrative exemption. Alternatively, the jury may agree with North American

---

[7] North American also notes that Taylor agreed that she was properly classified as exempt at two previous jobs where she performed largely the same duties, doc. 24 at 30, but Taylor's understanding of her exempt status is not dispositive and does not eliminate the factual dispute.

11

that is properly classified Taylor as an exempt employee.[8]  At this juncture, however, since the FLSA is "interpreted liberally in the employee's favor and its exemptions construed narrowly against the employer," *Rock*, 380 F. App'x at 877, and because the exemptions are "applied only to those *clearly and unmistakably* within the terms and spirit of the exemption," *Morgan*, 551 F.3d at 1269 (emphasis added), this case is not "so one-sided that [North American] must prevail as a matter of law," *Bowen*, 882 F.3d at 1392.  Summary judgment is therefore inappropriate.

## IV.

Taking the evidence in the light most favorable to Taylor, she is entitled to proceed to trial on her FLSA claim.  Questions of fact exist regarding whether Taylor meets the third requirement of the FLSA's administrative exemption, and North American therefore has not shown, as a matter of law, that it properly classified Taylor as an exempt administrative employee.  North American's motion for summary judgment, doc. 23, is **DENIED**.  And Taylor's motion to strike, doc. 30, is also **DENIED**.

---

[8] In its filings, North American argues essentially that Taylor's work involved "the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a); *see* docs. 24 at 23-33; 34 at 6-10.  It is possible that a properly instructed jury could find that Taylor "ha[d] authority to formulate, affect, interpret, or implement management policies or operating practices; . . . carrie[d] out major assignments in conducting the operations of the business; . . . perform[ed] work that affect[ed] business operations to a substantial degree; . . . [and] investigate[d] and resolve[d] matters of significance on behalf of management." 29 C.F.R. § 541.202(b).  But the fact that a jury *could* return a verdict in favor of the movant is not enough for the court to grant summary judgment.

**DONE** the 29th day of October, 2021.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE